Good morning, Your Honors. My name is Pamela Rubio. I represent Dimitri Woods. Good morning, Assistant State's Attorney Sarah Simpson on behalf of the people. Okay. Justice Smith is not able to be with us today, but as always, he is fully engaged, and we'll consider the arguments that are made here today before we issue an opinion or an order. So the usual rules apply. You guys are KG veterans. You know what to do. Fifteen minutes per side. If you go a little bit over, we don't have anything else this morning, so we're unlikely to be all that difficult with you about that. Okay? May it please the Court. Again, my name is Pamela Rubio. I represent Dimitri Woods. I'd ask for a few minutes for rebuttal. On appeal, Dimitri raised four issues in his brief, and I'd like to focus on the first two issues of the brief, but I'm happy to answer any questions about any of the issues. After Dimitri's four-year-old brother was attacked and robbed at a Walgreens parking lot, the two boys hopped on their bikes and started riding home. When Hillside Detective Daniel Perretta saw the two youths, whom he knew, he started following them because, as he stated at trial, he just wanted to talk to Dimitri about what possibly happened at Walgreens. Although Perretta did not suspect the boys of any wrongdoing, he put on his sirens and lights, continuously shouted out the window to stop, and chased them home, where he jumped out of his car and grabbed Dimitri by the hood of his sweatshirt, pulling him off his bike. This case is about the unauthorized use of coercive police force that exceeded the bounds of what was meant to be a consensual police-citizen encounter. While Detective Perretta had the right to approach Dimitri and ask questions, Dimitri had the equal right to ignore the police and refuse to answer those questions and go about his business. His refusal to cooperate does not justify a detention or seizure. But here, that is exactly what happened. For exercising his right to ignore the officer's questions and go about his business, Dimitri was chased down by the police, grabbed by the hood of his sweatshirt, and arrested and charged with resisting a peace officer. In fact, the state's theory in closing at trial was that Dimitri was guilty because he broke the rule that whenever an officer is investigating a possible crime and tells you to stop, you must comply with the officer's demands, even if the officer is acting in an unlawful manner. But that's not the law. Because Detective Perretta's use of coercive tactics in an attempt to force Dimitri into complying and his physical restraint of Dimitri was not an authorized act under the resisting statute, the state failed to prove that essential element of the crime. Likewise, because Dimitri's acts of running, pulling away, and failing to stop were consistent with his right in the context of a consensual police citizen encounter to ignore the police's requests and go on his way, the state failed to prove the essential element that he committed acts of resistance. And for those reasons, Dimitri asks that this Court reverse his conviction. Let's talk about the issue that you raised with respect to the charging instrument as it relates to the ruling made by the earlier judge about the probable cause to arrest. Sure. It's important to remember that in this case, the pretrial judge was a different judge than the trial judge. And pretrial defense counsel made the argument that I'm making today that the officer had no probable cause to arrest Dimitri, nor did he have any reasonable suspicion to conduct a Terry stop. And after a hearing, the pretrial judge ruled that there was no probable cause to arrest Dimitri, and he quashed the arrest and suppressed the evidence that was obtained. The state proceeded on the additional two counts, and at trial, the trial judge conceded on the record that he had not read the transcript from the pretrial proceedings, didn't know the basis for the pretrial judge's ruling on the motion to suppress, but maybe opined that it was possibly based on some sort of beyond the scope Terry stop situation. And when presented with the case law on the subject that consists of law that states that you can't charge a person, that a person is not committing this offense if it's not an arrest situation, the trial judge just said, denied the motion for a directive verdict and said, this situation is different here, never really addressing the real question of. But let's talk about the charging instrument, because you make a big point about the fact that in the charging instrument, as he was going to, trying to arrest the young man. Correct. And once probable cause is established, that there is no probable cause. Correct. Follow up on that. Sure. The statute of resisting a peace officer is general in nature, the statute itself. So therefore, the charging instrument had to be specific. It had to specify the acts that in this case, the state alleged constituted the crime. And the charging instrument in this case did do that. It stated that the authorized act that Dimitri was charged with resisting was his arrest. And it also charged three specific acts of Dimitri that the state alleged was acts of resistance. But the evidence at trial didn't pan out that way. They did not prove that Officer Perretta was trying to effectuate an arrest. And, in fact, in the state's briefs on appeal, they concede that it wasn't meant to be an arrest to begin with. They would have been arresting the victim. I'm sorry? Would they have been arresting the victim, in effect? Exactly, yes. Because, again, Officer Perretta received a call that there was a fight at a Walgreens parking lot. He didn't know if the fight was verbal or physical. He went to go respond. In the meantime, he sees Dimitri and his brother, whom he knows, and he calls dispatch and he says, Hey, what are those guys that connected to the fight, what did they look like? And all they said was there were two people on bikes in the area. He didn't know if they were male or female, if they were black or white, if they were 18-year-old or 58-years-old. He sees them and he decides he wants to just ask some questions. That's his trial testimony. And he at no point ever said he intended to arrest them, he meant to arrest them. And so because the state charged that the authorized act was arrest, their evidence clearly did not support that essential, did not prove that essential element. And for that reason, we're saying that he wasn't proven guilty beyond a reasonable doubt. Any double jeopardy concerns at all? I mean, you're asking for an outright reversal on that, correct? Yes, I'm asking for an outright reversal. I suppose that if they wanted to recharge him. He was found not guilty of the lesser included? Yes. Well, there were no. It wasn't lesser. It wasn't a lesser included, but he was acquitted of the. Aggravated assault. Aggravated assault. And the drug charge was dropped. So I don't see how they could really proceed with recharging him and reconvicting. You know, they presented their case. What's the second issue? The second issue relates to the jury instructions and ties into the closing argument instructions. And the closing argument issue. That his convictions must be reversed is also supported by the fact that the jury wasn't given adequate jury instructions that set forth a roadmap for them to reach a unanimous verdict based on culpable charged conduct. Again, as we discussed, he was charged with resisting arrest. He was also charged with three acts of resistance. Yet the instructions given to the jury didn't say what the authorized act of the officer was that he was charged with resisting, nor was it stated anywhere in the instructions what the acts were that Dimitri had allegedly acted in resistance. Those instructions didn't convey to the jury the state's entire burden. It just stated that the state must prove that he knowingly resisted the performance of an authorized act within his official capacity. But again, because the charging instrument had to have been specific, the state had to prove specific acts that constituted the crime. But because these instructions didn't apprise the jury of what was charged and didn't give them an opportunity to select from a myriad of different conduct throughout the course of the encounter with the officer, we can't be certain that the jury's verdict was unanimous and based on culpable conduct. It's possible because they weren't told what acts they could choose from, they relied on the fact that Dimitri shouted back to the officer, I'm not stopping, or refused to answer questions, which is not a crime. So because we can't be certain that the jury's verdict was based on culpable conduct, that's another reason for reversing Dimitri's conviction. Indulge us for a moment and talk about the videotape if we get to that issue. Sure. As Dimitri's brother testified at trial, the boys were at a Walgreens and his brother Davion was out in the parking lot and the video was of the parking lot. He testified at trial that he was assaulted by five or six guys who took his backpack, took his Walgreens bag, and Dimitri ran out and kind of shooed them away and helped his brother out. And they hopped on their bike and they started riding. The defense theory was that they did not know that the officer was a police officer in the black unmarked SUV and that they were afraid that the people in the SUV were actually the guys that had attacked Davion in the parking lot. The evidence, the Walgreens video, supports all of Davion's testimony relating to the Walgreens incident. And yet the trial judge wouldn't allow it in, finding that it was irrelevant because the resistance charge was not related to the incident that happened at the Walgreens. And because Dimitri wasn't charged with assault or battery connected to the Walgreens incident. But it was relevant because, as I pointed out in my brief, it not only bolstered or supported a finding of credibility of Davion's testimony, which was Dimitri's defense. It also supported the defense theory that possibly they thought that it was these kids that had attacked Davion in the parking lot. But the jury wasn't given that. So what the jury saw was a 14-year-old kid who's testifying for his brother, whom the state cross-examined and impeached and said, well, you love your brother, don't you? Wouldn't you do anything for him? They saw that. They saw the state's evidence consisting of a detective's testimony. But they were presented with the supporting relevant evidence that would have shown that there was another reason for Davion to testify the way he did, which was he was telling the truth. And the Walgreens video would have supported that. And for that reason, it was reversible error for the trial judge to exclude the video. Thank you. Thank you. Thank you. May it please the court. My name is Sarah Simpson. I'm an assistant state's attorney on behalf of the people of the state of Illinois. The defendant in this case was proven guilty of resisting a peace officer beyond a reasonable doubt. At this juncture of the proceedings, viewing the evidence in the light most order to prove the defendant guilty of resisting a peace officer, the people were required to show that he knowingly resisted the performance of any authorized act within the official capacity of Detective Parada, who is known to him to be a peace officer. Now the people's evidence conclusively established each of these elements by showing that Detective Parada was on call within blocks of where this battery occurred at Walgreens. He answered a radio dispatch, which gave him a description of people who were involved in the battery. That's what he knew at the time, that there were people that were involved in the battery. He then, this description was two people fleeing on bicycles. The defendant and his brother were the only people. No gender, no age, no. At that point, no. He knew two people fleeing on bicycles. But he knew that they were involved, and he knew that he was only a block away from the Walgreens at the time that he got this call. Good thing it wasn't downtown, because there'd be plenty of bikes out there. They'd be pulling everybody over. At this point in time, the detective testified that nobody else was on bicycles. So at that point, he was investigating a commission of a crime that had just occurred within a block from where he was. He saw the defendant and his brother. He asked them to stop so he can investigate a commission of a crime that just occurred. Instead of stopping, the defendant swore at the officer. Is that enough to be an authorized act? Stops, because I want to talk to you? Absolutely. As opposed to having probable cause to arrest, because that's established. You don't have it here, according to the earlier ruling. Probable cause to arrest for the battery. Right. That was the pre-trial judge's ruling. Absolutely. The case law says that it is an authorized act within the official capacity of a peace officer to investigate the commission of a crime. And that's what Detective Parada was doing. What about what your colleague says that in the cases that you bring up, that those cases there was also probable cause to arrest? In the cases that we cite in our brief, not necessarily. There are two cases that we cite, one of which they were responding to a group of men with a gun, and they went to investigate four people who happened to match the description. At that point, it was the investigation of the crime, and once they saw these individuals, all they had was a general description of them. The case law says that a peace officer, as an official act, can certainly investigate the commission of a crime. At this point, he did not know if they were the victims or the offenders, but he certainly, as part of an official act, can investigate, stop to ask questions. And then what's very interesting is Dimitri's actions in this case gave him additional reasonable suspicion. Because would the victim of a crime turn around, swear at an officer, say, I'm not stopping, go ahead and hit me, and then flee on a bicycle? Those are not consistent actions with someone who's just been the victim of a crime. And then the defense, how are you showing that he knew he was an officer? Well, the testimony at the motion and at the trial was that he was in a car with strobe lights, strobe headlights, a full light bar, and a siren. Well, that was the officer's testimony. That's correct. It wasn't Davian's testimony, it wasn't Dimitri's testimony, and it wasn't later the father's testimony. Well, the father was not present for that initial encounter. It was not the brother's testimony. That's correct. The defendant never testified at trial. This was at a Mars bar on top of the car. He said a full light bar on top of the car. That's correct. He did not. The officer did. The officer did? Yes. He had a full light bar on his car, oscillating headlights, and he had. Is it in the record? Yes. That there was a full light bar on top of the car? That's correct. Yes, he had a full light bar on his unmarked police vehicle. On the dashboard? And the light that he had was in the light that he activated, though, according to his testimony, was inside the car. Am I right about that? My understanding of the testimony, he activated both the lights, that it was a full light bar and strobe lights for the headlights that he activated. And he also activated a police siren, which he testified made a typical police siren wailing sound. And the detective also testified that because of prior encounters he'd had with the defendant, he knew them before, and when the defendant first told him he wasn't going to stop, he actually leaned out of his window and said, Dimitri, stop, pull over, Dimitri, pull over, at which point he again swore at the officer and continued to flee from his attempt to stop him, to talk to him about the battery. So these actions, combined with what he knows, certainly gave him, we would argue, reasonable suspicion, but it also clearly was in his official capacity to investigate and find out what had happened at the Walgreens, whether Dimitri was a victim or an offender. But that's not what you charged him with. What you charged him with was that he was going to arrest him. That's correct. Well, at this point in time, once he has now fled from, to respond to your question, two points on that. At this point in time, when he refuses to stop for a proper investigation of a commission of a crime, now he has resisted a peace officer. He has resisted an official act of his capacity, that being the investigation of the commission of a crime, and he is now doing a physical act of resisting by fleeing from him and refusing to pull over, his lawful order to halt. So now he has committed a resisting a peace officer, and Detective Pareto was fully in his right to arrest him for the resisting a peace officer that is now occurring, because at this point, the defendant is resisting the investigatory request to stop, and he's also resisting his arrest for resisting a peace officer. So at that point, the complaint as charged did comply with the evidence that was put forth before the jury. However, the problem with the defendant, the crux of the defendant's argument, and the problem with it, is that that was not an essential element. His authorized act was not an essential element that had to be pled and proven by the people. If you look at the jury instructions for this case, the essential acts are the name, date, place of offense, the statutory section, and the elements of the language of the statute. Now, the other provisions that the people put in the complaint were to give the defendant notice of what he did to violate the resisting a peace officer statute. The defendant's argument is that by giving the defendant notice in the complaint, we have somehow now elevated those clauses to elements that have to be proven beyond a reasonable doubt, and that is not what the law says. In fact, the actual official act, or authorized act, that Detective Pareto was performing at the time the defendant resisted is surplusage that did not need to be proven or pledged to the defendant. He could have been committing any one of the number of official acts that the defendant was resisting by the physical acts that he did. And by looking at the jury instructions, that establishes that that was not something, the jury was not instructed that he had, properly instructed, that he was performing a certain official act. And furthermore, defendant's citation to the Leach case does not stand for that proposition either. In Leach, the court simply said that the complaint at that time didn't even contain the element of an authorized act, or a physical act of resisting. And the court said that that element had to be pled in the complaint for it to be properly charged. In this case, we had that element properly charged, and the actual language that the official act was the arrest of Dimitri Woods was mere surplusage. And that aside, in addition, there was not a fatal variance between that act as charged and any later testimony, because any testimony that was proven was not material, it did not mislead the defendant in making the defense, and it did not subject him to double jeopardy. This court has held that if a crime can be committed by several acts, a variance between the act charged and the act proven will not be fatal. So in this case, Detective Prada did several acts within his official capacity. He started out with the investigation of the crime at Walgreens, and then he later attempted to arrest a defendant for resisting a peace officer, and then when a defendant attempted to strike him, he then arrested him for the act of aggravated assault to a peace officer. And the jury could have found the defendant guilty for resisting any one of those official acts. In addition, the defendant was not misled in making his defense by any possible deviation between the proof at trial and his allegation in the complaint, because Detective Prada testified in a motion as to every official act that he was performing during the course. So the defendant knew what he was being charged for, he knew what Detective Prada's course of his investigation was, and it didn't affect his defense in any way, because his defense at trial was that he wasn't resisting an act of a peace officer at all. It wasn't that he was resisting a different act. His position at trial through his brother was that he had no evidence that the car contained a police officer, that once they pulled him out, he complied immediately. So if there is any possible variance between the evidence presented at trial and then the complaint, it didn't affect the defendant's defense at all. And lastly, there was no risk of double jeopardy, because this complaint identified the victim, the nature of the incident, the date and the location. And the judgment and the record of his jury trial could certainly be used to bar subsequent prosecution for the same conduct. Now, touching on Your Honor's question about the pretrial judge's ruling on the motion to suppress, that ruling has no significance to the evidence that was put forth at trial. And that's because the trial judge's pretrial ruling was limited to the legal issue of whether the cannabis that was seized from the defendant, subsequent to his arrest, was seized from him legally or illegally. At no time did the motion judge make a ruling that Detective Parada was not acting in his official capacity at the time that he pursued defendants. If anything, he made a ruling that he did not have probable cause to arrest him for the battery and did not touch on the investigative stop or any of the other of Detective Parada's actions. And in fact, if you look at what happened immediately after the ruling on the motion to suppress, the court asked the parties, what do you want to do now on the case in chief? The prosecutor said, we're going to proceed on the resisting and the assault charge. The court said, fine. And the defendant said, we're going to take a jury trial. If the significance of that ruling was what the defendant makes it on appeal, then there would be no resisting case to proceed on. The defendant would have filed a motion to dismiss if, in fact, the judge's ruling was that he wasn't committing an official act within the purview of his authority. But nobody understood it to be like that because that wasn't the judge's ruling. His ruling was limited to the legal significance of the evidence that was seized from the defendant post-arrest. And he made absolutely no ruling that Detective Parada was not committing or performing an official act within his authorized capacity. How can you defend not letting the video in when these boys were not the ones who were doing the beating? Well, that was a proper ruling by the trial court because it just wasn't relevant to the material issues at the trial. Nothing that the defendant was charged with happened at Walgreens. And the police testified that they didn't go to the Walgreens. They didn't go to the scene. None of the charge events occurred at Walgreens. And he wasn't arrested for anything that occurred there. So the video really didn't go to any material issue that was before the jury. The material issues before the jury involved the investigation that Detective Parada had undertaken and the encounter that happened there. Pretty important evidence on the credibility issue. Of Davian? Yeah. But that was uncontradictive. The people never contradicted that Davian and his brother were the victims. You didn't contradict it, but you didn't also allow him to prove it the way he wanted to prove it by putting the video in. But at that point, if he was to put the video in, it would just be corroborating collateral testimony because the brother was saying that he was the victim, and he testified to that. That went unimpeached and uncontradicted by the people. So at that point, it would just be cumulative to his testimony. It didn't add anything to what Davian was saying. He testified that they were the victims and that they fled from the scene. And all the video would be doing was corroborating something that wasn't a material issue in the case. So the judge's ruling was clearly not an abuse of discretion because it really didn't go to anything that the jury needed to determine. I mean, the issues before the jury were whether the defendant knew that Detective Parada was a peace officer, whether the defendant resisted an authorized act, and whether there was a physical act of resisting. None of those material issues had anything to do with what occurred at Walgreens. And defendants claim now that it would offer something about his state of mind. What did he want to talk to him about? He wanted to talk to him about what had occurred at Walgreens. Right, but the material issues was whether the defendant knew that. So it's sort of material. No, it's not material. It's immaterial. The video is. Yeah, it's immaterial. It's what occurred at Walgreens. The video to corroborate the testimony came in. That testimony was before the jury. Davian was able to testify fully to the events that happened at Walgreens. There's no need to corroborate his testimony with the video from the Walgreens security camera because it was already fully before the jury. So any corroboration would just be on a collateral matter at that point. Was that sort of undermined by the state's question about how much Davian loved his brother? Well, I think that's a proper bias question of any family member. So it wouldn't be undermined by that because we never contested that part of his testimony. We never argued that they weren't the victims. That was never in any way contested by the people. The part of Davian's testimony that was contested by the people was the part that contradicted Detective Parada. Were the lights on? Were the sirens on? Did he call to you? Did he ask you to stop? Did your brother attempt to swing at him? Those are the material portions of his testimony that the people were trying to show that he was biased about. The people at no time argued or even suggested that the defendant and his brother were anything but the victims of the battery because that part was not material to the encounter between Detective Parada and the defendant. Detective Parada didn't know at the time that he attempted to stop Dimitri whether or not he was the victim or the offender. He hadn't been to Walgreens. He hadn't spoken to anybody at Walgreens. So playing the video would just corroborate a non-essential part of Davian's testimony, which is why it wasn't an abuse of discretion. And to respond briefly to counsel's argument that it would show the defendant's state of mind, that's actually completely not the case. That video does not show these offenders going into an SUV. It shows the offenders leaving on foot. So there's nothing about that video which would reinforce the argument that they thought that SUV contained the offenders and not the police officers. In fact, there's nothing that would show what the defendant was thinking at all by that video. It doesn't show that they didn't think that either. It shows the door. When you look at the video, you see from the inside of the Walgreens to the outside. You're looking through the front door. You see these two guys, Dimitri and Davian, being pummeled by these five guys. The five guys run off into what looks like more of the parking lot. They could have gotten into a car. They could have kept running. They could have gotten on their own bikes. Who knows what happened to them? Nobody knows. We don't know from the video, but it is at least plausible that Davian and Dimitri thought, well, we're in a parking lot. There are cars here. It's possible those guys got in a black SUV, and they're chasing us. Well, but the video wasn't necessary for that. There was nothing about that video. They made that argument at trial. Defense counsel made that exact argument at trial. Davian testified that that's what they thought, but the video wasn't essential for that. So the video would not reinforce or support or corroborate that theory in any way. I don't think that the state should necessarily be in charge of what the defendants want to prove or how they want to prove it. And that's what it seems like you're trying to say here, that they didn't need the video. It was unnecessary. No, our position is that the court, it was not an abuse of the court's discretion. Okay. Okay. I'm saying that the court's ruling was proper. The court made this ruling. The court stated that it was not relevant to the material issues in the case for these reasons. And we're supporting the court's ruling because it was cumulative of the testimony that was before the court. I think it's pretty hard to support the court's ruling in that specific regard. I really do. Well, in any case, okay. Well, if so, then even if there was any error, such an error would be harmless because the defendant was not prejudiced by this ruling whatsoever. As we stated, Davian's testimony was uncontradicted. Defense counsel made a full argument at trial that they were the victims in his closing argument. The people never contested that Davian and his brother were anything but the victims. And they also argued that the defendant did think that the SUV contained their attackers and not the police. So all of those arguments that would come forth in the video were properly before the jury. So even if the court did abuse the discretion of this ruling, there was no prejudice to the defendant. It would be harmless. And just to touch lastly on the jury instruction issue. No need. Okay. May I briefly conclude? Yes. Then for these reasons and the reasons in our brief, the people of the State of Illinois respectfully request that you affirm defendant's conviction for resisting a peace officer. Thank you very much. Before you even say anything, let me ask you, why can't the police officer who's activated his lights and sirens expect the defendant here to stop and talk to him when he's asked to stop and talk to him? Why is that not an authorized act of a police officer? Because there was no reasonable suspicion here. This wasn't a Terry stop. The officer said.  All he knew was that there was a fight. Does he have to have that suspicion before he puts the lights and siren on? He does not, but he needs to have that suspicion to demand the person to stop. The United States Supreme Court has said the Fourth Amendment right to go about your way in a situation like this is equal that the officer's right to stop someone and question them is just as equal as the person's right to refuse to answer the questions. In this case, it's not a situation. Dimitri and his brother were already on their bikes. They were already riding their bikes home. The officer knew where they lived. They didn't try to evade the police. They didn't try to go down an alley. They went their way. They continued the same direction that they were going, home. And so there's no reason why the officer couldn't have just stopped pursuing him and go to the home and knock on his door. He wasn't investigating these individuals because they were suspected of a crime. And, in fact, the testimony is undisputed that they were actually victims here. So all he wanted to do was ask them some questions. Did the state at any time intimate that maybe they weren't victims? Or did the state just sort of accept it without comment? Well, Detective Preda at one point in the trial referred to them as suspects, that the dispatch said that the suspects were on bicycles. But at another time he said that they were subjects. But there was never any argument provided. There was never any testimony from the detective that they were suspected in committing a crime. And, in fact, the dispatch said a fight. Again, it didn't say a battery. So the detective said all he wanted to do was ask him some questions about what happened in the Walgreens parking lot. And if we allow officers to force people to stop and answer questions when they don't have grounds, they have no reasonable suspicion or probable cause to require them to stop, that would be giving the state a heads-you-lose and a tails-I-win situation, and the Fourth Amendment loses in that case. And in regards to the state's argument that while the encounter transpired, probable cause arose, again, there's plenty of case law that says you cannot create probable cause for resisting an arrest if there was no grounds to stop the person to begin with. And in terms of the video issue, the state contends that it wasn't prejudicial. It was absolutely prejudicial. The only ace in the defense's hole was the brother's testimony. And, again, as I stated, the state tried to dirty up this testimony, but tried to put it in a light that he was maybe a little biased towards his brother. And this video would have been absolutely pivotal in the jury's determination of his credibility, which credibility is absolutely material. So for those reasons, we ask that this court reverse the situation. Thank you. Thanks for the briefs and the argument. You know, sort of a relatively simple case raising important issues. Very interesting and well done by both sides.  Thank you. We're adjourned. Thanks. You're welcome.